COUNTY OF MIDDLESEX *vs.* CITY OF WALTHAM.

SAME *vs.* SAME.

SAME *vs.* SAME.

SAME *vs.* SAME.

Middlesex.      November 6, 1931. — March 28, 1932.

Present: RUGG, C.J., PIERCE, WAIT, SANDERSON, & FIELD, JJ.

*Tax*, Assessment, On land held by county for hospital purposes.

Land held by counties actually devoted to a public use, or designed to be so devoted within a reasonable time, is exempt from taxation unless there is special statutory provision to the contrary.

The establishment of a tuberculosis hospital under the provisions of St. 1916, c. 286, was a public purpose.

Land, acquired by a county in 1917 and 1918 for the building and maintenance of a tuberculosis hospital thereon under St. 1916, c. 286, and still retained by the county till June, 1925, solely with intent to build such hospital thereon but, by reason of the Great War and other circumstances not foreseen at the time of the purchases, without any construction being done although efforts looking toward construction were put forth and investigations and studies were carried on, was not taxable to the county in 1922 although hay and grass growing thereon were sold and it was rented from time to time to tenants at will upon agreement that such tenants were to vacate at any time upon notice.

The land above described was not legally taxed in 1923, 1924 and 1925 under G. L. c. 58, § 13, in the amended form appearing in St. 1923, c. 271, § 1; § 17A, added to said c. 58 by St. 1923, c. 271, § 4, where it appeared that the commissioner of corporations and taxation had not fixed its value, as required by such statutes.

Cities and towns have no inherent power to levy taxes; they can exercise only such power as has been confided to them by the General Court.

FOUR ACTIONS OF CONTRACT to recover money paid for taxes alleged to have been assessed contrary to law. Writs dated November 8, 1922; October 31, 1923; December 5, 1924; and December 2, 1925.

Proceedings in the Superior Court and findings by a commissioner are described in the opinion. The actions

were heard by *Broadhurst*, J., who found for the plaintiff in each action: in the first action in the sum of $1,575.59; in the second in the sum of $1,477.50; in the third in the sum of $1,367.43; and in the fourth in the sum of $1,467.53. The defendant appealed in each action.

*J. J. Foster*, for the defendant.

*L. A. Mayberry*, (*W. F. Levis & H. L. Barrett* with him,) for the plaintiff.

RUGG, C.J.   These are actions of contract to recover money paid for taxes alleged to have been assessed contrary to law.   The cases were referred to a commissioner and were heard upon his report supplemented by an agreed statement of facts.   His findings of fact are *prima facie* true.   G. L. c. 59, § 67.   *South Lancaster Academy* v. *Lancaster*, 242 Mass. 553, 555, 556.   The facts thus found, stated summarily, are these: The land on which the taxes were assessed was acquired by the plaintiff in conformity to the mandate of St. 1916, c. 286, for a tuberculosis hospital.   Two purchases to that end were made, one in 1917 and one in 1918.   By reason of the Great War and other circumstances not foreseen at the time of the purchases, the actual construction of the hospital was much delayed, although efforts were put forth to that end and investigations and studies were carried on.   The mandatory requirement was continued until by the enactment of St. 1924, c. 500, the plaintiff was permitted, but not required, to make other arrangements for the care of tubercular patients. Other arrangements were made in June, 1925.   Until about that time the county commissioners of the plaintiff intended to build the hospital and did not earlier reach a contrary determination or abandon their purpose to devote the land in question to the uses of a tuberculosis hospital.   The land was never appropriated to any other use.   The county commissioners, in 1925, undertook to sell the property and a sale was made in 1927.   The property was rented from time to time to tenants at will upon agreement that such tenants were to vacate at any time upon notice.   Hay and grass growing on the land were sold.   All these uses tended to preserve the properties,

were incidental to the dominant end for which the land had been acquired, and the comparatively trifling revenue therefrom tended to reduce the public cost of the enterprise. The trial judge found that until June 1, 1925, the land was appropriated to a public purpose. This finding was plainly warranted, if not required. The establishment of a tuberculosis hospital was a public purpose. *County of Essex* v. *Newburyport*, 254 Mass. 232.

It is manifest that it was the honest intention of the responsible public officers of the plaintiff to build a hospital upon the land in question until June, 1925, when, by virtue of a change in the statutes, another course seemed wise. Counties are territorial subdivisions of the Commonwealth bounded and organized by the General Court for the convenient administration of some parts of government. They are bodies politic and corporate. They exist solely for the public welfare. They own property for public uses. Land held by counties actually devoted, or designed to be devoted within a reasonable time, to public uses is exempt from taxation unless there is special statutory provision to the contrary. *Collector of Taxes of Milton* v. *Boston, ante*, 274, 278, and cases cited. *Worcester County* v. *Mayor & Aldermen of Worcester*, 116 Mass. 193. *Connecticut Valley Street Railway* v. *Northampton*, 213 Mass. 54, 56.

The revenue derived by the plaintiff from the land pending deferred execution of the intention to erect the hospital was a mere incident to the main object for which the land was bought and held. Thus the case at bar is distinguishable from *Essex County* v. *Salem*, 153 Mass. 141, where the evidence showed that the land taxed had not been actually appropriated to any public purpose, that the intention so to appropriate it, if any, was indefinite and dependent upon events which might or might not come to pass, and that the land was actually let for purposes of revenue.

It follows that the plaintiff is entitled to recover the taxes assessed and paid for the year 1922.

Different factors must be considered with respect to the taxes assessed for 1923, 1924 and 1925. It was provided in St. 1923, c. 271, by § 1, amending G. L. c. 58, § 13, that the

commissioner of corporations and taxation "shall between April first and June first in the year nineteen hundred and twenty-three, and in the year nineteen hundred and twenty-five . . . determine as of April first the fair cash value of all land in every town held by county commissioners for hospital purposes" under G. L. c. 111, §§ 78–90, which are applicable to the land here in question. By § 17A, added to G. L. c. 58 by § 4 of said c. 271, it was provided that "The assessors of any town in which county commissioners hold land for the purposes set forth in section thirteen shall assess such land to the county in the annual valuation and tax list at the value determined by the commissioner . . . and at the tax rate of the town for that year. If notification as provided in said section fourteen is not received by the assessors in time to make the assessment in the manner above provided, the land shall be assessed at said value under" sections relating to later assessment of property omitted from earlier assessment.

Provision is thus made by statute for the assessment of land held by counties for hospitals. So far as we are aware, this is the first provision for the taxation of such property. The commissioner of corporations and taxation never made any valuation of the land here in question. He did not adopt, as perhaps was required by said c. 271, § 3, amending G. L. c. 58, § 15, in the absence of valuation made by him, the "assessed valuation of said land made in the year last preceding such acquisition" by the county for hospital purposes. Nor did the assessors adopt such valuation. They made a different valuation. Doubtless the commissioner of corporations and taxation might have been compelled at the instance of the defendant to perform the duty imposed on him by said c. 271. *Milton* v. *Auditor of the Commonwealth,* 244 Mass. 93. His failure to act did not authorize the assessment of the land in question in any other way or manner than that prescribed by said c. 271. Cities and towns have no inherent power to levy taxes. They can exercise only such power as has been confided to them by the General Court. *Duffy* v. *Treasurer & Receiver General,* 234 Mass. 42, 47. The provisions of statute as to

the assessment of taxes must be followed in substantial particulars and with somewhat technical strictness. *Granger* v. *Parsons,* 2 Pick. 391. *Hough* v. *North Adams,* 196 Mass. 290, 293. The result is that the assessments for the years 1923, 1924, and 1925 were illegal.

Question has been raised whether the cases are rightly before us on appeal under G. L. c. 231, § 96, as amended by St. 1928, c. 306, § 2. Since in any event the ultimate decision must be against the defendant, there is no objection to stating the grounds of substantive law which on the merits support that conclusion. *Commonwealth* v. *McNary,* 246 Mass. 46, 48, and cases cited.

*Orders of judgment for plaintiff affirmed.*