ASSESSORS OF QUINCY *vs.* CUNNINGHAM FOUNDATION.

Suffolk, November 5, 1937. — March 25, 1940.

Present: FIELD, C.J., LUMMUS, QUA, & DOLAN, JJ.

*Tax*, Exemption. *Corporation*, Charitable. *Constitutional Law*, Taxation.

A charitable corporation incorporated under G. L. (Ter. Ed.) c. 180 and empowered to "acquire and hold real estate" for the purposes of improving and beautifying the town of Milton, of improving the libraries and schools of that town, of promoting teaching therein of industrial arts, and of promoting the health of that town's inhabitants, was authorized to own forty-two acres of vacant land in Quincy comprising a part of a tract of one hundred ten acres, the remainder of which was in Milton, all used as a unit for the corporation's purposes, although limited by it to use by inhabitants of Milton.

A charitable corporation was entitled under G. L. (Ter. Ed.) c. 59, § 5, Third, to exemption from taxation of forty-two acres of vacant land owned by it in Quincy, comprising a part of a tract of one hundred ten acres, the remainder of which was in Milton, all used as a unit for the corporation's charitable purposes, although it restricted the use of the land to inhabitants of Milton; so applied, the statute was not unconstitutional.

APPEAL from a decision of the Board of Tax Appeals.

*F. D. Coffman,* for the Assessors of Quincy.

*W. F. Farr,* (*E. D. Hanify* with him,) for the taxpayer.

FIELD, C.J. This is an appeal by the board of assessors of the city of Quincy from a decision of the Board of Tax Appeals — now succeeded by the Appellate Tax Board, St. 1937, c. 400 — abating a local property tax assessed for the year 1935 upon certain real estate in the city of Quincy owned by the Cunningham Foundation — herein referred to as the taxpayer — on the ground that such real estate was exempt from taxation under G. L. (Ter. Ed.) c. 59, § 5, Third. By this statute "real estate owned and occupied" by "literary, benevolent, charitable and scientific institutions . . . for the purposes for which they are incorporated" is exempt from local taxation.

The taxpayer in 1933 was incorporated as a charitable corporation under G. L. (Ter. Ed.) c. 180, which authorizes the formation of a corporation "for any civic, educational, charitable, benevolent or religious purpose." See § 2. By § 9 of that chapter a corporation organized for any of the purposes mentioned in the chapter "may hold real and personal estate . . . which estate . . . shall be devoted to the purposes set forth in its charter or agreement of association."

Pertinent findings of fact made by the Board of Tax Appeals are as follows: The taxpayer's "charter" — meaning its certificate of incorporation embodying the purposes set forth in its agreement of association, G. L. (Ter. Ed.) c. 180, § 3 — contained the following provisions: "The purposes for which the corporation is formed are the following charitable objects: — To improve and beautify the Town of Milton in this Commonwealth; to improve the libraries and schools of said town; to promote the teaching in said schools of sewing and other industrial arts; to promote the health of the inhabitants of said town by aiding parks, playgrounds and hospitals within said town and by making provision for the said inhabitants in the hospitals of other places; and in furtherance and not in limitation of the foregoing: . . . To pursue any of the above objects and to exercise any of the corporation's powers from time to time to the exclusion of the other objects and powers, all as in the opinion of the corporation or its Board of Managers may be beneficial in the accomplishment of its general purposes. . . . To join or cooperate with others in carrying out the above charitable objects and to aid, support or maintain the work of others in furtherance of said objects. . . . To acquire and hold real estate, buildings and personal property of all kinds, and to construct buildings."

The real estate upon which the tax was assessed consisted of "five contiguous parcels of unimproved real estate" amounting "in area to a little over forty-two acres. They are a portion of a single undivided tract of real estate of about one hundred ten acres, the remaining portion of

which tract lies in the town of Milton. . . . [The taxpayer] acquired title to the entire tract as a single unit in February, 1933. Continuously from that date it has operated and used the entire tract as a unit. . . . The entire tract is open to the citizens of the town of Milton as a public park and recreation ground and is used and enjoyed by them in great numbers. . . . [The taxpayer] makes an effort to limit the use of the tract to the citizens of that town and has erected signs thereon to the effect that the land is private property restricted to the use of citizens of the town of Milton." On the portion of the tract lying in Milton there are several buildings including a gymnasium, a large stable and a hospital. "The hospital is located within about five hundred feet of the Quincy portion of the tract. On the Milton portion of the tract, there are also two baseball fields, tennis courts, a swimming pool and a skating pond. . . . The rest of the entire tract, including the whole portion lying in the city of Quincy, is rough and rocky and is covered with pine trees. The underbrush is kept cleared away and there are paths thereon suitable for walking and for horseback riding, which are used for such purposes by those taking advantage of the facilities of the park. These paths are kept in good condition and repair. . . . In its present condition the portion of the tract lying in the city of Quincy serves also as a screen for the more developed portions of the tract lying in the town of Milton thus preventing the too close proximity of buildings and commercial uses, such as quarryings, which might be deleterious to the park itself and to the hospital."

The assessors properly make no contention that the taxpayer is not a charitable corporation within the meaning of G. L. (Ter. Ed.) c. 59, § 5, Third, or that the real estate in question, if properly held by the taxpayer, was not occupied by it for the purposes for which it was incorporated within the meaning of that statute. See *Assessors of Boston* v. *Garland School of Home Making*, 296 Mass. 378, 384–386. See also *Burbank* v. *Burbank*, 152 Mass. 254, 255–256; *Bartlett, petitioner*, 163 Mass. 509, 514; *Ware* v. *Fitchburg;* 200 Mass. 61, 66; *Richardson* v. *Essex Institute*, 208 Mass.

311, 318. And see *Wesleyan Academy* v. *Wilbraham*, 99 Mass. 599; *Massachusetts General Hospital* v. *Somerville*, 101 Mass. 319; *Emerson* v. *Milton Academy*, 185 Mass. 414; *Amherst College* v. *Assessors of Amherst*, 193 Mass. 168; *Wheaton College* v. *Norton*, 232 Mass. 141.

The assessors, however, contend that the real estate in question was not exempt under the provisions of G. L. (Ter. Ed.) c. 59, § 5, Third, (a) on the ground that ownership by the taxpayer of such real estate in the city of Quincy was not within the taxpayer's corporate power, and (b) on the further ground that the inhabitants of the city of Quincy derived no benefit from the use of such real estate, and that consequently the exempting statute, if construed to apply to such real estate, would violate the provisions of art. 10 of the Declaration of Rights, and of c. 1, § 1, art. 4 of the Constitution of the Commonwealth. Neither of these contentions can be sustained.

First. It has been held that a "corporation, which as against the State has no right to hold . . . [certain] property, is not in a position to claim a statutory exemption which is intended only for a holding fully authorized by law." *Evangelical Baptist Benevolent & Missionary Society* v. *Boston*, 204 Mass. 28, 33. But in our opinion the holding by the taxpayer of the real estate in question was fully authorized by law. The provision in the "charter" of the taxpayer authorizing it to "acquire and hold real estate" is not in terms limited to real estate in the town of Milton or exclusive of real estate in the city of Quincy. Nor is there any such restriction in terms in G. L. (Ter. Ed.) c. 180, § 9. The express limitation in the "charter" to the town of Milton is a limitation upon the charitable objects of the corporation, not upon the means by which such objects are to be accomplished. And the statutory limitation upon holding real estate is merely that the real estate "be devoted to" the purposes stated in the "charter," that is, to the accomplishment of the charitable objects therein described. It cannot rightly be said, on the facts found by the Board of Tax Appeals, that the real estate in question was not devoted to these purposes or that it

did not serve to promote them to such a degree that it was reasonable and proper for the taxpayer to hold such real estate. The facts found disclose that ownership by the taxpayer of the real estate in question was fairly incidental to the taxpayer's main purpose in view of the benefits resulting to the park and hospital in the town of Milton from the ownership and occupation by the taxpayer of the real estate situated in the city of Quincy. See *Richardson* v. *Massachusetts Charitable Mechanic Association,* 131 Mass. 174, 176; *Bradbury* v. *Boston Canoe Club,* 153 Mass. 77, 78; *Wheaton College* v. *Norton,* 232 Mass. 141, 148–149, and cases cited. See also *Old Colony Railroad* v. *Evans,* 6 Gray, 25, 39; *MacRea* v. *Selectmen of Concord,* 296 Mass. 394, 398.

Second. The stated purposes of the taxpayer's incorporation and the actual operations of the taxpayer (see *Little* v. *Newburyport,* 210 Mass. 414, 415; *Assessors of Boston* v. *Garland School of Home Making,* 296 Mass. 378, 384–385) are primarily, if not exclusively, for the benefit of the inhabitants of the town of Milton. Other persons benefit indirectly, if at all. This fact, however, is not fatal to the exemption.

While the exemption granted by G. L. (Ter. Ed.) c. 59, § 5, Third, is from the local property tax, it is not granted by the city or town in which the property is situated, but by the General Court as the representative of the Commonwealth, which alone has the power to tax. "Cities and towns have no inherent power to levy taxes. They can exercise only those powers to tax which have been delegated to them by the General Court as the representative of the Commonwealth. They can levy taxes only on the property and for the purposes established by the General Court acting within its constitutional limitations." *Duffy* v. *Treasurer & Receiver General,* 234 Mass. 42, 47. See also *West Boylston Manuf. Co.* v. *Assessors of Easthampton,* 277 Mass. 180, 190; *County of Middlesex* v. *Waltham,* 278 Mass. 514, 517. The General Court has not delegated to the city of Quincy any authority to tax real estate owned and occupied by a charitable corporation for the purposes

for which it was incorporated within the meaning of G. L. (Ter. Ed.) c. 59, § 5, Third.  That statute, providing a rule of State wide application of exemption from local taxation contains no express limitation of the exemption to real estate owned and used by a charitable corporation in such a manner that a benefit results to the inhabitants of the city or town in which such real estate is situated.  And no such limitation can be implied unless without it the exempting statute would be unconstitutional.

There is, however, nothing in the Constitution which requires such an implied limitation of the exemption.  By c. 1, § 1, art. 4, of the Constitution of the Commonwealth taxes on property must be "proportional and reasonable" within a taxing district which, with respect to local taxation is ordinarily a city or town.  See *Oliver* v. *Washington Mills*, 11 Allen, 268, 274; *Opinion of the Justices*, 208 Mass. 616, 618; *Duffy* v. *Treasurer & Receiver General*, 234 Mass. 42, 47.  See also *Opinion of the Justices*, 220 Mass. 613, 620–621.  But neither this constitutional provision nor the more general provisions of art. 10 of the Declaration of Rights precludes reasonable exemptions.  Compare *Opinion of the Justices*, 270 Mass. 593, 599.  Exemptions from the local property tax have been granted on various grounds, though the constitutionality of some of them has not been affirmed.  *Opinions of the Justices*, 195 Mass. 607, 608–612; 270 Mass. 593, 599.  Exemptions from the local property tax to avoid double taxation doubtless are constitutionally within reasonable limits, even though the inhabitants of the municipality in which the property is situated derive less immediate benefit from the substituted tax or excise than they would have derived from a local tax upon such property.  See *Opinions of the Justices*, 195 Mass. 607, 611; 261 Mass. 523, 545.  This has been held expressly with respect to the exemption from the local property tax of intangible property the income of which is subject to the State income tax, though in this instance there is specific constitutional authority under the income tax amendment (Amendment 44) to the Constitution of the Commonwealth for the income tax and for the exemption of such property

from the local tax. *Duffy* v. *Treasurer & Receiver General,* 234 Mass. 42, 51.

Moreover, by implication rather than by express statutory provision, real estate "taken or held for a public use by one municipality within the territorial limits of another, or within its own boundaries, is not subject to taxation so long as it is actually devoted to a public use. The reason is that property held and used for the benefit of the public ought not to be made to share the burden of paying the public expenses." *Collector of Taxes of Milton* v. *Boston,* 278 Mass. 274, 277. See also *Wayland* v. *County Commissioners,* 4 Gray, 500; *Somerville* v. *Waltham,* 170 Mass. 160; *Miller* v. *Fitchburg,* 180 Mass. 32; *County of Middlesex* v. *Waltham,* 278 Mass. 514. The same result follows where the real estate is held by the municipality upon a trust for a public charitable purpose for the reason that such property "supplies funds for a purpose which otherwise must be provided for by taxation, and so far tends to lighten the public burdens." *Burr* v. *Boston,* 208 Mass. 537, 539. And this implied exemption extends to real estate held by a public service corporation having the right to take such real estate by eminent domain for public purposes and using it for such purposes. "It is the character of the use to which the property is put, and not of the party who uses it, that settles the question of exemption from taxation." *Milford Water Co.* v. *Hopkinton,* 192 Mass. 491, 495–497. See also *Worcester* v. *Western Rail Road,* 4 Met. 564. Compare *Connecticut Valley Street Railway* v. *Northampton,* 213 Mass. 54; *Collector of Taxes of Boston* v. *Rising Sun Street Lighting Co.* 229 Mass. 494. In some of the cases herein cited (see, for example, *Miller* v. *Fitchburg,* 180 Mass. 32) it is not apparent that any direct benefit would result from the use of the real estate to the inhabitants of the municipality in which it is situated. And any indirect benefit to them would be extremely remote, scarcely going beyond the benefit resulting to them from the greater welfare of other inhabitants of the Commonwealth. *Wayland* v. *County Commissioners,* 4 Gray, 500, 501. Yet exemption has not been denied on this ground.

The exemption which the taxpayer seeks is not an implied exemption, as in the case of real estate held by a municipality or by a public service corporation for public purposes, but is an exemption expressly granted by statute. Its constitutional basis, however, is closely similar. The ground of the exemption is that the use of the exempted property alleviates "some burden of government, by conferring benefits which would advance the public interest." *Boston Symphony Orchestra, Inc.* v. *Assessors of Boston*, 294 Mass. 248, 256. As was pointed out in the *Opinion of the Justices*, 195 Mass. 607, 609, since "taxation of the people may be imposed" for objects for which corporations described in the exempting statute are incorporated, the property of such corporations "may well be exempted from taxation." See also *Massachusetts General Hospital* v. *Belmont*, 233 Mass. 190, 203. Whether there are purposes for which such corporations could be incorporated, but for which taxation could not rightly be imposed need not be decided. Clearly this is not true of the taxpayer's purposes. These purposes as stated in its "charter" and as actually carried out are for the benefit of "the public at large or some part thereof, or an indefinite class of persons" — an essential element of a public charity. *Old South Society in Boston* v. *Crocker*, 119 Mass. 1, 23. *Assessors of Boston* v. *Garland School of Home Making*, 296 Mass. 378, 387. They are charitable in nature even though limited to benefiting the inhabitants of a single municipality (see *Burbank* v. *Burbank*, 152 Mass. 254, 256), and are within the scope of legitimate governmental activity. Real estate used for these purposes may, therefore, be treated as property used for public purposes and may be relieved, for that reason, of the burden of local taxation.

The power of the General Court to exempt from the local property tax property used for public purposes clearly is not limited to cases where the benefit resulting to the public from such use is an exact equivalent of the burden imposed upon a taxing district or taxing districts by such exemption through increasing the rate of taxation upon other properties therein. Ordinarily the determination

whether there was or was not such equivalence would be difficult, if not impossible. It would frequently, if not usually, be a matter upon which men of sound judgment would differ. Such a limitation upon the exemption, however, is not essential to its reasonableness. Similarly an exact equivalence between the benefits resulting to the inhabitants of a taxing district from such a public use and the burden imposed upon that district by the exemption is not essential. It has been said in other connections that "Benefits conferred by government upon individuals or territorial subdivisions cannot be adjusted with precise equality in relation to the amounts exacted in way of taxation and the resources to meet such exactions" (*Duffy* v. *Treasurer & Receiver General*, 234 Mass. 42, 53), and that "it is not essential to a valid scheme of taxation that all the people benefit from it in precisely the same degree. No tax system has been devised whereby a perfect equalization of its burdens or an exact distribution of the benefits of expenditure of money raised by taxation can be accomplished." *County of Essex* v. *Newburyport*, 254 Mass. 232, 236. A State wide rule of exemption such as is laid down by the statute in question that is reasonable in its general application is not rendered unconstitutional as applied to a particular case by the fact that no substantial benefit from the use for public purposes of specific real estate results to the inhabitants of the municipality in which such real estate is situated as distinguished from other members of the public. It does not follow from the fact that in a single instance the burden imposed upon a municipality by the exemption from local taxation of specific real estate therein used for public purposes may be greater than the benefit resulting from such use to the inhabitants of that municipality that the operation of the general rule of exemption, as applied to all cases within its terms, does not result in a fair distribution of the burden of exemption of property used for public purposes, considered in its relation to the benefits resulting from the use for public purposes of property generally.

The reference in the opinion in *Boston Symphony Orches-*

*tra, Inc.* v. *Assessors of Boston,* 294 Mass. 248 — a case involving the question whether certain real estate in the city of Boston was exempt from local taxation — to the absence of "an equivalent or recompense to the city of Boston" in the way of "benefits which would advance the public interest" (page 256) is not to be regarded as recognizing the limitation upon exemption for which the assessors contend in the present case.

It follows that the real estate in question was exempt from local taxation, and that the taxpayer is entitled to an abatement of the tax assessed thereon.   Abatement must be granted in the sum of $490.20.

*So ordered.*